# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 1, 1892.

META PACKARD

VS.

THE CORPORATION FOR THE RELIEF OF WIDOWS AND ORPHANS, ETC.

*Richard M. Venable*, for plaintiff.
*C. H. Wyatt* for defendant.

DENNIS, J.—

From the agreed statement of facts, and the deeds offered in evidence it appears that sometime prior to June 20th, 1853, John Eager Howard agreed to lease to Garrett Brown a certain lot of ground situated in St. Paul street, near Madison street, in this city, for ninety-nine years, renewable forever; that on the 20th of June, 1853, Howard, at the request of Brown, the latter also uniting in the deed, conveyed the said property to Franklin Wilson, in fee, for the sum of forty-five hundred dollars; and on the same day, and by deed recorded simultaneously with the one from Howard to Wilson, Wilson and wife, in consideration of $1000, paid by Brown, leased the ground to the said Garrett Brown for 99 years, renewable forever, reserving an annual rental of $210 payable in quarterly instalments, the said lease containing the covenants usual in such instruments, together with the covenant that the said Wilson would "at any time after the expiration of ten years from the date hereof, and within one year thereafter and during the continuance of this demise" execute a deed, in fee, of the reversion to Brown upon the payment of $3,500, and all arrears of rent. The peculiar wording of this covenant and the right of the lessee to redeem *at any time* during the continuance of the lease will be considered later; for the present, it need only be said that the right was never sought to be exercised within the one year after the ten years from the date of the lease. It also appears, by the agreement of counsel, that this ground was assessed to John Eager Howard as vacant ground, and taxes were paid on it as such by Howard for the years 1852 and 1853; that *sometime* in 1853, but whether before or subsequent to June 20th is not known, improvements upon this lot were begun, which were assessed at $7,000 to Brown in 1854, and that taxes on this improvment were paid by Brown for the first time for the year 1854.

By certain mesne conveyances which it is unnecessary to recite, the leasehold estate became vested in the complainant, and the reversions in fee in the respondent.

Upon this state of facts, the plaintiff asks that this lease from Wilson to Brown may be construed to be a mortgage, and that he may be allowed to redeem the same upon the payment of three thousand five hundred dollars, which at six per cent. would be the capitalization of the ground rent $210 reserved by the deed.

It is contended that upon the face of the transaction it appears that Brown only paid $1,000 of the $4,500 purchase money paid to Howard, the other $3,500 having been paid by Wilson, and that the latter, to secure himself for this advance, had the deed of the property made to him; and to protect Brown's interest in the property executed this lease with a ground rent of $210, which he was at liberty to redeem at any time within ten years; that the latter transaction was therefore but a means of securing the loan of $3,500 to Brown advanced by Wilson as part of the purchase money to Howard; and, whatever the *form* of the transaction, it was in fact a mere security for the loan of money—a mortgage—and that, treating it as such, the mortgagee is entitled to redeem at any time, upon payment of the amount intended to be secured.

No fault can be found with the theory of law upon which this contention is founded; for it is well settled that wherever the effort is merely to provide the repayment of a loan or advance of money, no matter what form the transaction takes, it will be regarded as only a mortgage, and the equity of redemption cannot be disannexed.

Story's Equity Jur., 1018; but I do not think the facts upon which this theory is sought to be supported are shown with anything approaching the degree of certainty which should be required in a case like the present. The fundamental fact required to be proved is that the $3,500 paid by Wilson to Howard was meant as a loan from the former to Brown. The only testimony offered to establish this fact are the two deeds themselves, and such deductions as may be drawn from their contents and their simultaneous execution. There is nothing in the language used to prove that Wilson paid this money, intending it as a loan to Brown; and while that theory may be made to consist with the terms of the deed and the circumstances attending the transaction, yet it is not necessarily—nor even with any degree of reasonable certainty—to be so drawn. On the contrary, it is also entirely consistent both with the papers and the other circumstances, that Brown did not want to buy the property in fee, paying outright $4,500 for it, but was willing to pay $1,000 for the privilege of carrying the property upon a ground rent of $210, with the right of redemption at any time within a year after the expiration of ten years from the date of the lease, and that Wilson was willing to pay $3,500 to Howard for the advantage of obtaining so desirable a ground rent. Assuming, as may fairly be done, the property to be worth $4,500, a ground rent to the full extent of its value would hardly have been marketable at par at that time, unless the property had been improved; and there is no evidence that it had been improved at the time of the lease or that Brown was under any obligation to improve it. In this way Wilson would get an excellent ground rent, and Brown would have the property upon the payment of only $1,000 cash, subject to the annual rent, which he could redeem at his option at any time within the time provided. In any event, this theory of the transaction seems as plausible and as reasonable as the other contended for on behalf of the plaintiff, and is consistent with all the circumstances of the transaction so far as they are known to us; and moreover, it has the *plain language* of the *deeds* to *support* it, while the other construction would defeat that language and require the Court to give them a different import from what their terms import.

In effect, the plaintiff seeks to establish what is in the nature of a secret lien—wholly antagonistic to what the deeds express upon their face—a lien which they contend is to be kept active for the full life of the lease, viz: ninety-nine years, and which may be set up at any time, notwithstanding the successive changes of holders of the property in the meanwhile. Public policy and the well established rules of law, forbid that instruments of title should be treated thus lightly—that deeds which upon their face have a distinct legal meaning and effect, should, after the lapse of forty years, and when the parties who might have more fully explained the situation are dead, be construed as having a different, and a fundamentally different, import from that which they express. This will only be done, in the few cases where it will be allowed at all, upon the clearest and most convincing testimony.

But the bill has a double aspect; and it asks that, even though the deed of lease from Wilson to Brown should be held to create a redeemable ground rent, yet that the plaintiff should be allowed to redeem now, or any time during the continuance of the lease, by reason of the language of the covenant providing for redemption. The covenant provides for redemption by the lessee and his assigns, upon the payment of $3,500 and all arrears of rent, *"at any time after the expira-*

*tion of ten years from the date of the lease and within one year thereafter and during the continuance of this demise."* It is insisted that the words *"and during the continuance of this lease"* are to be construed *disjunctively,* destroying the previous requirement for redemption within one year after the expiration of ten years from the date of the lease, and allowing it to be done at any time before the lease expires; and this upon the principle that the words of a grant, when inconsistent, are to be construed most strongly against the grantor.

In the attesting clause of the lease it is stated that the words "and during the continuance of this lease" were interlined previous to its execution.

Ingenious arguments were made by counsel on both sides as to why, and at whose instance, and for whose benefit, the insertion of these words was made, but they are necessarily more or less speculative, and we are left therefore to construe the words as they stand, without the aid of other explanation.

Now, while it is a well known rule that the words of a grant are to be construed most strongly against the grantor, yet that rule has no application unless the language of the grant is ambiguous or conflicting; and if the words can be fairly construed so as to make the whole language have effect, then the more controlling rule that the intention of the parties must be carried out prevails.

Is there, then, any such conflict in the language of the covenant as to justify the Court in setting aside any of its terms, or can the words be consistently construed so as to give effect to all? There is no inconsistency in the language unless we adopt the construction sought to be given it by the plaintiff, who would have the word *"and"* in the sentence "and at any time during the continuance, &c," construed to mean *"or"*; by adopting this construction, there would undoubtedly be a conflict between the two provisions—one of which would then allow redemption to be had within a year after the expiration of ten years

from the date of the lease, and the other *at any time* during its continuance.

It is true that sometimes "and" may be construed to mean "or," but this is done to remove—and not to create, inconsistency; and there is no reason whatever why such meaning should be given to it here. In its ordinary and natural acception "and" is used conjunctively, and it clearly has that meaning in the several dependent sentences above quoted from the covenant; they are conjunctive and cumulative. The redemption may take place "at any time within a year and after the expiration of ten years from the date of the lease, and during the continuance of the demise." It is very clear that the words were inserted out of the abundant—almost excessive—caution which conveyancers formerly adopted and which still governs them, to prevent a claim to the right of redemption being set up, if, at any time before the lapse of the time for redemption, the lease should for any reason have become forfeited. It may be said that if such was the purpose of their insertion, the words were unnecessary. That may be true, and it is equally true of many other of the regular formula we find in all conveyancing; but as all know that in nearly every lease, even to this day we find substantially similar provisions, the sole purpose for their being to confine the right to redeem to the period of the continuance of the lease.

To adopt the plaintiff's construction would be to give the word "and" a forced and unnatural meaning, and to create an inconsistency where none exists; and it would require us to wholly disregard and nullify the words which provide for the redemption of the lease at any time within one year after the expiration of ten years from its date; while by giving to "and" its usual and natural meaning, the whole language can stand together and full effect be given to every provision.

I will sign a decree dismissing the bill.